IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| TIMOTHY C. LENHART, | ) | |
|---|---|---|
| | ) | Civil Action No. 11 - 312 |
| Plaintiff, | ) | |
| | ) | District Judge Joy Flowers Conti |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| THE COMMONWEALTH OF PA, *et al*., | ) | ECF Nos. 71, 73, 76 |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that the Motions to Dismiss filed by Defendants Naphcare, Inc. (ECF No. 71), the Commonwealth of Pennsylvania (ECF No. 73), and Westmoreland County and the Westmoreland County Prison (ECF No. 76) be granted. It is also recommended that Plaintiff's claims be dismissed with prejudice as to all Defendants because it is clear that granting Plaintiff further leave to amend would be futile.

**II.     REPORT**

Plaintiff, Timothy C. Lenhart, initiated this action on March 9, 2011, pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983. (ECF No. 1.) In his Complaint, he alleged violations of his federal constitutional rights stemming from his confinement in the Westmoreland County Prison as a pre-trial detainee. (ECF No. 3.) Plaintiff named as Defendants: The Commonwealth of Pennsylvania, John Walton (Warden of Westmoreland County Prison), the Westmoreland County Clerk of Court, and Naphcare, Inc. (the healthcare

1

provider for the Westmoreland County Prison). Defendants filed Motions to Dismiss Plaintiff's Complaint (ECF Nos. 31, 33, 39), and upon consideration of the Motions and briefs in support and opposition thereof, the undersigned entered a Report and Recommendation on January 12, 2012. (ECF No. 53). Plaintiff filed objections to the Report and Recommendation and the District Judge entered a Memorandum Order on March 7, 2012, adopting the Report and Recommendation in part (ECF No. 60). Plaintiff's claims were dismissed with prejudice except as to Defendant John Walton in his individual and official capacity, Defendant Westmoreland County Clerk of Court, and Defendant Naphcare, Inc. *See* ECF No. 60. Plaintiff was allowed to file an amended complaint with respect to his claims against these Defendants in accordance with the Memorandum Order. Id. He was warned, however, that he was not to include within his amended complaint claims that had been already dismissed with prejudice. Id.

On May 2, 2012, Plaintiff filed an Amended Complaint against the following Defendants: The Commonwealth of Pennsylvania, Westmoreland County, Westmoreland County Prison, and Naphcare, Inc. (ECF No. 70.) Defendants have once again filed Motions to Dismiss Plaintiff's Amended Complaint (ECF Nos. 71, 73, 76) and Plaintiff has filed responses in opposition thereto (ECF Nos. 78, 82). As such, the Motions are now ripe for review.

**A. Standard of Review**

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a

speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v.

Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### B. Plaintiff's Allegations

Plaintiff's Amended Complaint is, at best, difficult to read and decipher. From what the Court can tell, he asserts a litany of unrelated claims in connection with his arrest, criminal charges, prosecution, and conditions of confinement in the Westmoreland County Prison.

First, Plaintiff alleges that he was arrested on May 29, 2008, and found not guilty of all charges in March of 2009. He claims that he was arrested without probable cause and maliciously prosecuted by the Westmoreland County District Attorney's Office.

Plaintiff next alleges that while he was confined in the Westmoreland County Prison in June of 2008, he was taken off Tetracycline, medication that had previously been prescribed to him for his acne rosacea. Plaintiff asserts that he was taken off his medication by a nurse because the Deputy Warden of the Westmoreland County Prison implemented a new policy that required his family and/or friends to provide him with the medication. Plaintiff asserts that his family and friends were unable to do this and as a result he suffered scars and damage to his skin.

Also with regards to his medical care, Plaintiff asserts that he contracted what he believed to be MRSA, a staph infection, in August of 2008. He requested to see a doctor but was only allowed to see a nurse. He was given antibiotics and then later taken off of them after they

4

proved to be ineffective.  However, he was again placed on antibiotics when he requested to see a doctor.  Plaintiff claims that he was neither tested for MRSA nor isolated from the general prison population even though his wound was seeping.  He claims that he suffered physical pain and scaring as a result of the infection and jeopardized the health and safety of other detainees.

Finally, Plaintiff asserts that he was arrested without probable cause on July 10, 2010, and he was again maliciously prosecuted by the Westmoreland County District Attorney's Office.  He was apparently acquitted of some charges and convicted of others, which he appealed.  He claims that while he was confined in the Westmoreland County Prison following his arrest, he was "mocked" and "badgered" by a jailhouse informant for approximately six months.  He claims that this was cruel and unusual punishment.  He also claims that his right to counsel and due process were violated when the jailhouse informant's name was placed on a witness list for his criminal trial.

Plaintiff claims that he was unable to exhaust his administrative remedies because they were not available to him.  Specifically, he claims that the jail's handbook was not issued upon commitment and did not outline the grievance procedure.  He also claims that he was provided with neither the jail's handbook nor grievance forms upon request.

### C.  Defendants' Motions to Dismiss

**1.     Defendant The Commonwealth of Pennsylvania**

The Commonwealth of Pennsylvania moves to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  A motion to dismiss pursuant to Rule 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction.  "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion."  <u>Symczyk v. Genesis HealthCare Corp.</u>, 656 F.3d 189, 191 n.4 (3d Cir. 2011)

(citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). In considering a Rule 12(b)(1) motion, "the district court may not presume the truthfulness of plaintiff's allegations, but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'" Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

The Commonwealth of Pennsylvania asserts that it is entitled to Eleventh Amendment immunity. The Supreme Court has made clear "that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000). Notwithstanding, the immunity provided in the Eleventh Amendment is not absolute, but the Supreme Court has recognized only two circumstances in which an individual may sue a State. First, a state may expressly waive its grant of sovereign immunity by consenting to suit. Clark v. Barnard, 108 U.S. 436, 447-48 (1883). Second, Congress may abrogate the States' immunity from suit pursuant to its powers under Section 5 of the Fourteenth Amendment. *See*, *e.g.*, Fitzpatrick v. Bitzer, 427 U.S. 445 (1976). However, Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 246 (1985).

The Commonwealth of Pennsylvania has not waived its grant of sovereign immunity under the Eleventh Amendment. In fact, the Commonwealth specifically has reserved its immunity against federal suits in 42 Pa. C.S. § 8521(b), which provides that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." None of the exceptions to sovereign immunity contained in 42 Pa. Const. Stat. § 8522 are

applicable to Plaintiff's allegations. Moreover, the federal courts repeatedly have held that Congress did not abrogate the States' Eleventh Amendment immunity when it enacted the Civil Rights Act, 42 U.S.C. § 1983. *See*, *e.g.*, Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Quern v. Jordan, 440 U.S. 332, 341 (1979); Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378 (M.D. Pa. 1995) (holding that States' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996). Consequently, Plaintiff's Amended Complaint should be dismissed with prejudice against the Commonwealth of Pennsylvania.

To the extent Plaintiff suggests that the Commonwealth is not entitled to immunity because he suffers from certain medical conditions, his arguments are unavailing. In response to the undersigned's previous Report and Recommendation regarding Commonwealth immunity, Plaintiff objected on the basis that Title II of the Americans with Disabilities Act ("ADA") abrogates Eleventh Amendment immunity and that because he suffers from Reflex Sympathetic Dystrophy ("RSD") the Commonwealth should not be entitled to immunity in this case. Noting that Plaintiff did not allege an ADA violation in his Complaint or assert any facts in connection with his RSD condition, the District Judge determined Plaintiff's objections were without merit. Even though Title II of the ADA validly abrogates sovereign immunity as to state conduct that *actually* violates the Constitution, *see* United States v. Georgia, 546 U.S. 151, 159 (2006), Plaintiff was advised that he had to initially state a valid claim under Title II of the ADA in order for the Court to determine whether he could sue the Commonwealth for damages. Plaintiff appealed this portion of the Court's Memorandum Order, which the Court treated as a motion for

reconsideration. In denying the motion, Plaintiff was once again informed that he did not allege an ADA violation in his Complaint. He was advised that he needed to include this claim within his Amended Complaint in order for it to be considered by the Court.

Plaintiff has once again failed to assert an ADA claim under Title II in his Amended Complaint. Moreover, the undersigned notes that none of Plaintiff's allegations could form the basis of a valid ADA claim under Title II against the Commonwealth of Pennsylvania because the issues in Plaintiff's Amended Complaint relate entirely to his confinement in the Westmoreland County Prison, a *county* facility. As such, the conduct of which he complains is not state conduct. Consequently, the Commonwealth of Pennsylvania should be dismissed from this action with prejudice.

**2.     Defendant NaphCare, Inc.**

NaphCare, Inc. ("Naphcare") argues that Plaintiff's claims should be dismissed for his failure to state a claim upon which relief can be granted. It is well-established that a "private corporation contracted by a prison to provide health care for inmates cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom[1] or policy[2] of exhibiting deliberate indifference to a prisoner's serious medical needs." Henry v. Buskirk, No. 08-1348, 2011 U.S. Dist. LEXIS 18644, at *9-11 (E.D. Pa. Feb. 24, 2011) (citing Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978)).

---

[1]     A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997).

[2]     A policy, for purposes of § 1983, is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)).

The Third Circuit has held that

> [t]here are three situations were acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale, 318 F.3d at 584 (internal quotations and citations omitted). The plaintiff bears the burden of proving that a "policymaker" is responsible for either the policy or the custom that caused the alleged constitutional violation. *See* id.

In this case, the allegations in Plaintiff's Amended Complaint do not remotely suggest that Plaintiff's injuries were caused by a NaphCare custom or policy. Plaintiff alleges that he was deprived of Tetracycline pursuant to a policy implemented not by NaphCare, but rather former Westmoreland County Prison Deputy Warden Zalewski. Moreover, Plaintiff does not claim that the allegedly inadequate medical treatment for his staph infection resulted from a NaphCare custom or policy. Rather, he alleges that NaphCare had no policy with respect to treatment of staph infections. However, Plaintiff's own allegations establish that NaphCare did in fact have a policy of providing medical treatment for staph infections. Specifically, Plaintiff alleges that he was seen by a nurse and given two courses of antibiotics. Plaintiff takes issue with the fact that he was seen by a nurse instead of a doctor and that he was not isolated from the general prison population upon presenting with a staph infection. However, these issues represent nothing more than Plaintiff's disagreement with who provided him medical treatment

9

and the course of treatment pursued by that medical professional. Such disagreements are insufficient to state a constitutional violation. *See* White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); *see*, *e.g.*, Torres v. Prime Care Med, Inc., No. 12-2358, 2012 U.S. Dist. LEXIS 136043, at *4-5 (E.D. Pa. Sept. 24, 2012) (dismissing plaintiff's claim that he was not immediately isolated from the general prison population because it represented nothing more than plaintiff's disagreement with his medical treatment). Therefore, Plaintiff's Amended Complaint should be dismissed with prejudice as to Defendant NaphCare.[3]

### 3. Defendant Westmoreland County Prison

Plaintiff names the Westmoreland County Prison as a Defendant to this lawsuit. However, the Westmoreland County Prison is a county jail and a jail is not an entity cognizable as a "person" amendable to suit under 42 U.S.C. § 1983. *See*, *e.g.*, Vance v. County of Santa Clara, 928 F. Supp. 993, 995 (N.D. Cal. 1996) (county department of corrections is an agency of the county and cannot be sued separately from the county under section 1983); Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D. N.Y. 1994) (county jail not an entity amendable to suit under section 1983); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (Cook County Jail not a "person" under section 1983); McCoy v. Chesapeake Corr. Center, 788 F. Supp. 890, 893-94 (E.D. Va. 1992) (local jail not a "person" under section 1983); Mayes v. Elrod, 470 F. Supp. 1188, 1192 (N.D. Ill. 1979) (county department of corrections not a suable entity separate from the county). Therefore, the Westmoreland County Prison should be dismissed from this action with prejudice.

---

[3] Furthermore, although NaphCare does not move to dismiss on this basis, Plaintiff's claims relating to his medical care and treatment are clearly barred by the statute of limitations as discussed hereinafter in connection with Defendant Westmoreland County.

### 4. Defendant Westmoreland County

#### a. State Tort Law Claims

Although not entirely clear from his Amended Complaint, Plaintiff appears to assert state law claims of intentional infliction of emotional distress, libel, slander, false arrest and malicious prosecution. Westmoreland County asserts that it is entitled to immunity for any state tort law claim Plaintiff attempts to assert in his Amended Complaint. In this regard, the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S. § 8541, *et seq.*, establishes the extent to which a political subdivision of the Commonwealth of Pennsylvania, like Westmoreland County, may be liable for the tortious acts of its agents. At the outset, section 8541 provides:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. C.S. § 8541. A "local agency" is defined to include "[a] government unit other than the Commonwealth government." 42 Pa. C.S. § 8501. Accordingly, Westmoreland County is a local agency immune from damages.

However, where the General Assembly specifically waives immunity, liability may attach. 42 Pa. C.S. § 8541. Liability may be imposed where damages are recoverable at common law or under a statute creating a cause of action if the injury was caused by a person not protected by immunity; the injury was caused by negligent acts of the local agency, or its employees acting within the scope of their duties; and, the claim falls within one of eight enumerated exceptions in 42 Pa. C.S. § 8542(b). *See* 42 Pa. C.S. § 8542(a)(1)-(2). These eight exceptions include: (1) vehicle liability; (2) care, custody and control of personal property; (3)

real property; (4) trees, traffic controls and lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody and control of animals. 42 Pa. C.S. § 8542(b)(1)-(8).

In this case, even if Plaintiff sufficiently pleaded his claims of intentional infliction of emotional distress, libel, slander, false arrest and malicious prosecution, they are not negligent acts exposing Westmoreland County to liability. *See* McDonald v. Borough, No. 07-4588, 2008 U.S. Dist. LEXIS 77774, at *29-30 (E.D. Pa. Oct. 3, 2008) (false imprisonment and false arrest); Romig v. Northampton County Dep't of Corr., No. 06-05309, 2008 U.S. Dist. LEXIS 24829, at * 18-19 (E.D. Pa. Mar. 24, 2008) (citing Udujih v. City of Phila., 513 F. Supp. 2d 350, 358 (E.D. Pa. 2007)) (libel and slander); Kearney v. City of Phila., 616 A.2d 72, 74 (Pa. Commw. Ct. 1992) (intentional infliction of emotional distress); Miller v. Emelson, 520 A.2d 913, 915 (Pa. Commw. Ct. 1987) (malicious prosecution). Furthermore, while there is statutory abrogation of immunity of individual employees for intentional torts, it does not remove the immunity of the local agency. 42 Pa. C.S. § 8550; *see* Smith v. City of Chester, 851 F. Supp. 656, 659 (E.D. Pa. 1994). Consequently, Westmoreland County is immune from suit for the state tort law claims Plaintiff attempts to assert in his Amended Complaint. Therefore, these claims should be dismissed with prejudice.

### b. Federal Claims

#### i. Statute of Limitations

First, Westmoreland County correctly notes that many of Plaintiff's claims are barred by the applicable statute of limitations. Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

at law . . ." but it does not provide for any applicable statute of limitations. 42 U.S.C. § 1983. Title 28 U.S.C. § 1652 provides that "[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as the rules of decision in civil actions in the courts of the United States, in cases where they apply," and 42 U.S.C. § 1988 further provides that

> the protection of all persons in the United States in their civil rights…shall be exercised and enforced in conformity with the laws of the United States…but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil…cause is held…shall be extended to govern the said courts in the trial and disposition of the cause….

42 U.S.C. § 1988(a).

In fact, the Supreme Court stated that, "in 42 U.S.C. § 1988 Congress had plainly instructed the federal courts to refer to state law when federal law provides no rule of decision for actions brought under § 1983 . . . ." Chardon v. Soto, 462 U.S. 650, 657 (1983) (citing Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio, 446 U.S. 478, 484 (1980)). Thus, in "civil rights actions under 42 U.S.C. §§ 1983, 1985, federal courts must ascertain the underlying cause of action under state law and apply the limitation period which the state would apply if the action had been brought in state court" and the "controlling statute of limitations in an action pursuant to 42 U.S.C. § 1983 is the most analogous one provided by state law." Jennings v. Shuman, 567 F.2d 1213, 1216 (3d Cir. 1977) (citing Polite v. Diehl, 507 F.2d 119, 122 (3d Cir. 1974)); Eubanks v. Clarke, 434 F. Supp. 1022, 1030 (E.D. Pa. 1977).

In this case, the applicable statute of limitations is two years. *See* 42 Pa. C.S. § 5524(1) and (2); Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998). In

addition, a § 1983 cause of action "accrues when the plaintiff knew or should have known of the injury upon which its action is based." Sameric, 142 F.3d at 599.

Plaintiff initiated this case on March 9, 2011; therefore, any claim premised on alleged unlawful conduct that occurred prior to March 9, 2009, is barred by the applicable statute of limitations. This includes Plaintiff's claims relating to his May 29, 2008 false arrest and subsequent malicious prosecution and his inadequate medical care claims in connection with his Tetracycline and staph infection that occurred in 2008. Consequently, these claims should be dismissed with prejudice.

### ii. Remaining Claims

Westmoreland County moves to dismiss Plaintiff's remaining claims on the basis that Plaintiff has failed to state a claim upon which relief can be granted. This includes Plaintiff's claims for false arrest and malicious prosecution in connection with the arrest on July 10, 2010, and his claims in connection with the jailhouse informant.

A local government like Westmoreland County may not be sued under section 1983 for an injury solely inflicted by its employees or agents. Monell, 436 U.S. at 694. Instead, a governmental unit may be liable under section 1983 only when its "policy" or "custom," whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, directly inflicted the injury. Id. at 694. Mere identification of a policy or custom is not enough to establish liability; a plaintiff must also show a "direct causal link" between the policy and the constitutional violation. Bd. of County Comm'rs of Bryan County, 520 U.S. at 405 (a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights).

Here, Plaintiff's allegations are insufficient to state a claim against Westmoreland County. First, it appears that Plaintiff seeks to hold Westmoreland County liable for the alleged wrongful acts of individuals he encountered during his arrest, criminal prosecution, and confinement in the Westmoreland County Prison solely because the County is their employer. However, to the extent Plaintiff attempts to use this legal theory as a basis for Westmoreland County's liability under section 1983, his claims should be dismissed because liability cannot be predicated solely on the operation of *respondeat superior*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Monell, 436 U.S. at 694.

Additionally, Plaintiff has failed to sufficiently allege that his injuries were caused by a Westmoreland County policy or custom. Specifically, Plaintiff states that Westmoreland County is liable for his unlawful arrest and subsequent malicious prosecution solely because the County is responsible for all arrests and prosecutions. However, Plaintiff does not allege facts showing that his alleged false arrest and malicious prosecution resulted from the execution of a policy or custom of Westmoreland County. The mere fact that Plaintiff was arrested by Westmoreland County police, prosecuted by the Westmoreland County District Attorney's Office, and subsequently acquitted of several charges is insufficient to show such a policy or custom. As such, these claims should be dismissed against Westmoreland County. See Dacchille v. Woodbridge Twp., No. 10-5504, 2011 U.S. Dist. LEXIS 116916, at *28 (D. N.J. Oct. 7, 2011) (dismissing false arrest and malicious prosecution claims against Township and police department for failure to allege facts showing a policy or custom encouraging the unlawful behavior); Harris v. Cape May County, No. 08-4264, 2008 U.S. Dist. LEXIS 71722, at *13 (D. N.J. Sept. 3, 2008) (dismissing malicious prosecution claim against the County because "nothing

alleged in the Complaint supports an inference that the alleged malicious prosecution resulted from the execution of a policy or custom" of the County).

Next, Plaintiff claims that the jailhouse informant's verbal harassment for six months amounted to cruel and unusual punishment. He vaguely asserts some custom or policy on behalf of Westmorland County because this specific jailhouse informant had previously been used to harass other detainees. It is well settled, however, that allegations of verbal abuse or threats, unaccompanied by physical injury or damage, are not cognizable under section 1983. *See* Jean-Laurent v. Wilkinson, 438 F. Supp. 2d 318, 324-25 (S.D. N.Y. 2006) (pre-trial detainee's claim of verbal abuse not cognizable under section 1983 because verbal intimidation did not rise to the level of a constitutional violation); Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D. N.Y. 1996) (threats and verbal harassment without physical injury or damage not cognizable under section 1983); *see also* Stepney v. Gilliard, No. 02-5259, 2005 U.S. Dist. LEXIS 31889, at *19 (D. N.J. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms."); Abuhouran v. Acker, No. 04-2265, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . verbal harassment, . . . standing alone, do[es] not state a constitutional claim.") (citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D. Pa. 1995)). Here, Plaintiff states that he was "badgered," "mocked," and called names such as "frying pan man." Clearly, these allegations of verbal harassment do not state a claim upon which relief can be granted. Consequently, this claim must be dismissed with prejudice.

Finally, Plaintiff claims that his Sixth Amendment right to counsel and Fourteenth Amendment right to due process were violated when the jailhouse informant's name was placed

on a witness list for his criminal trial. The Sixth Amendment right to counsel, made applicable to the states through the Fourteenth Amendment, ensures the right to effective assistance of counsel during the critical stages of a criminal prosecution and attaches once adversary judicial criminal proceedings are initiated against a person by way of formal charge, preliminary hearing, indictment, information, or arraignment. *See* Brewer v. Williams, 430 U.S. 387, 398 (1977); Kirby v. Illinois, 406 U.S. 682, 688-89 (1972). The deliberate use of jailhouse informants to elicit incriminating information may violate a defendant's right to counsel under the Sixth Amendment. United States v. Henry, 447 U.S. 264, 274 (1980); *see also* Massiah v. United States, 377 U.S. 201, 206 (1964). In Massiah, the Supreme Court held the government violates a prisoner's Sixth Amendment right to counsel when it uses, as evidence, statements made by the defendant "which [it] had deliberately elicited from him after he had been indicted and in the absence of his counsel." Id. at 206. However, the Sixth Amendment does not forbid admission of an accused's statement to a jailhouse informant who makes no effort to stimulate conversations about a crime charged and serves as a mere "listening post." Kuhlmann v. Wilson, 477 U.S. 436, 456 n.16 (1986).

Plaintiff's claim fails for several reasons. First, Plaintiff merely alleges that his right to counsel was violated when the jailhouse informant's name was placed on a witness list for trial. However, this conduct alone does not establish a Sixth Amendment violation of the right to counsel. Plaintiff does not allege that the jailhouse informant elicited any incriminating statements from him and that such statements were used against him in his criminal trial. Indeed, Plaintiff does not even allege that the jailhouse informant testified at his criminal trial.

Moreover, even assuming the jailhouse informant did testify at Plaintiff's criminal trial as to incriminating statements he deliberately elicited from Plaintiff in the absence of counsel and

17

those statements led to Plaintiff's conviction, this claim would be barred under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). <u>Heck</u> bars a civil rights action alleging a violation of a right where prevailing on the claim would necessarily imply the invalidity of the plaintiff's conviction or sentence. <u>Id</u>. at 487. Plaintiff alleges that he was convicted of some charges and he is currently appealing his conviction and sentence in the Pennsylvania state courts. Assuming there was a Sixth Amendment violation, prevailing on this claim would imply the invalidity of Plaintiff's conviction. As such, this claim is not cognizable in this litigation until such time Plaintiff's conviction has been overturned or otherwise invalidated. *See* <u>Valdez v. Rosembaum</u>, 302 F.3d 1039, 1049 (9th Cir. 2002) (<u>Heck</u> barred plaintiff's Sixth Amendment claim alleging interference with his right to communicate with counsel); *see also* <u>Telepo v. Martin</u>, 359 F. App'x 278, 280 (3d Cir. 2009) (concluding that plaintiff's Sixth Amendment right to assistance of counsel claim was not cognizable in a section 1983 action pursuant to <u>Heck</u> even though the plaintiff was seeking declaratory relief). Consequently, this claim should be dismissed.

5.  **Exhaustion of Administrative Remedies**

Defendants Westmoreland County and the Westmoreland County Prison move for dismissal of Plaintiff's claims for Plaintiff's failure to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act. However, dismissal should not be granted on this basis for the same reasons stated in the undersigned's previous Report and Recommendation dated January 12, 2012.

III. **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Motions to Dismiss filed by Defendants Naphcare, Inc. (ECF No. 71), the Commonwealth of Pennsylvania (ECF No. 73), and Westmoreland County and the Westmoreland County Prison (ECF No. 76) be

granted. It is also recommended that Plaintiff's claims be dismissed with prejudice as to all Defendants because it is clear that granting Plaintiff further leave to amend would be futile.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: November 1, 2012

                                            Lisa Pupo Lenihan
                                            Chief United States Magistrate Judge

cc: Timothy C. Lenhart
     KJ 8290
     SCI Cresson
     Cresson, PA 16699
     *Via U.S. Postal Mail*

     Counsel of Record
     *Via ECF Electronic Mail*